HOUSING ACCESS PROJECT
Michelle Uzeta, Esq., SBN 164402
michelleu@potterhandy.com
Mark Potter, Esq., SBN 166317
mark@potterhandy.com
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Roz Alexander-Kasparik, as an individual and in her capacity as the Conservator of David Rector,<br><br>Plaintiffs,<br><br>v.<br><br>Trilogy Real Estate Management, Simon Levi LLC, and Does 1-10 inclusive,<br><br>Defendants. | Case No: 3:15-cv-00291-W-JMA<br><br>Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction |

Plaintiff David Rector hereby files the following Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction.

//
//
//
//
//

# TABLE OF CONTENTS

I. FACTUAL STATEMENT……………......………………...……1

II. ARGUMENT……………….…………………………………………4

    A. Plaintiff is Likely to Succeed on the Merits of his Claims …...…5

        1. Fair Housing Amendments Act (FHAA)………………..….5

            a) Plaintiff is a qualified individual with a disability…..6

            b) Defendant knew or should have known of Plaintiff's disability……………………………….……..……………6

            c) Plaintiff's accommodation request is necessary and reasonable…………………………….…...…………7

        2. State Law……………….....……....…………………….9

    B. Plaintiff is Likely to Suffer Irreparable Harm Absent Preliminary Relief ……………….……………………………………………….9

    C. The Balance of Hardships Heavily Favor Plaintiff………….....…………………………………………10

    D. The Public Interest is Best Served Through Issuance of an Injunction……………....……………………………….………10

III. PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND…………….....…………………………………….….………11

IV. CONCLUSION……………....…………………………....….………11

# TABLE OF AUTHORITIES

**Cases**

Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) ……...……………....…………………………………….….5

Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999) ……...….11

Broodmore San Clemente Homeowners' Assn. v. Nelson, 25 Cal.App.4th 1, 5–7, 30 Cal.Rptr.2d 316 (1994)…………………………………………….9

Chalk v. United States Dist. Court, 840 F.2d 701, 710 (9th Cir. 1988)…..…9

City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) ……...………………...………………………….5

Crosby v. National Foreign Trade Council, 530 U.S. 363, 372-373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000)..……………..…..…………………….8

Cupolo v. Bay Area Rapid Transit, 5 F.Supp.2d 1078, 1084 (N.D. Cal., 1997)…….………..……………...…………………………………...9

Giebeler v. M&B Associates, 343 F.3d 1143, 1147, 1155, 1156, 1157 (9th Cir. 2003)……………………………………………………………..6, 7

Gonzalez v. Recht Family P'ship, No. 14CV2940-WQH-DHB, 2014 WL 7564713, at *3 (S.D. Cal. Dec. 30, 2014)...………………………...…9

Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir.2009)…………..……11

Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)…………....…11

Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984) …...…………..……...……………………………....…4

Silver Sage Partners v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir.2001) …...……………..…...……………………………...………9

S. California Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n, 426 F.Supp.2d 1061, 1068 (C.D.Cal.2005)………....…………………………...9

Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2004)...11

Ticketmaster L.L.C. v. RMG Techs., Inc., 507 F.Supp.2d 1096 (C.D.Cal.2007) …....…………….....……………………………………11

U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-402, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002)…..…………………………………………………….7

United States v. California Mobile Home Park Mgmt. Co., 107 F 3d 1374, 1380-1381 (9th Cir. 1997) …..………………….....………………… 5, 7

Walker v. City of Lakewood, 272 F.3d 1114, 1131 n. 8 (9th Cir.2001)……9

Walter v. Pierce, 665 F. Supp. 831, 844 (N.D. Cal. 1987)…………………11

Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)……..…………….....……………………………………..…………5

**State Statutes**
Cal. Gov. Code § 12921…..…………....…………………………….……10
Cal. Gov't Code § 12927(c)(1)…..………….....……………………………8

**Federal Statutes**
42 U.S.C. § 3601…....………….....……………………….……………….10
42 U.S.C. §3602(h) ………..………....…………….........................……..6
42 U.S.C. § 3604(f)(2)(A)………………….....…………….....................5
42 U.S.C. § 3604(f)(3)(B)…………..…………….....…………….....……5
42 U.S.C. § 3613 ………..…….....…………………………….……...…10

42 U.S.C. § 3614(d)(1)(c) ………...……....…………………….…....……10

42 U.S.C. § 3615………...……....………………………………….…...……8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL STATEMENT

Plaintiff David Rector ("Plaintiff" or "David") is an individual with multiple disabilities including quadriplegia, aphasia, apraxia and vascular steal syndrome. Declaration of Rosalind Alexander-Kasparik ("Kasparik Decl.") at ¶1. David uses an oversized manual wheelchair to accommodate his disabilities. Id. at ¶2. It measures 65 inches in length and 31 inches in width. Id. David's wheelchair must be reclined and his legs elevated and extended at all times or he risks losing his left dialysis access and/or foot to amputation. Id.

David and his fiancé and conservator Rosalind Alexander-Kasparik ("Roz") moved into the Simon Levi Building ("Simon Levi") on July 15, 2013. Id. at ¶3. David and Roz have resided in unit #302, on the 3rd floor of the Simon Levi continuously since that time. Id.

One of the reasons David and Roz moved into the Simon Levi was the fact that the building has a large freight elevator, capable of accommodating David's oversized wheelchair. Id. at ¶4. Prior to moving into the Simon Levi, Roz explained to the leasing agent that David would need to use the freight elevator due to the size of his wheelchair and need to remain reclined. Id. The leasing agent indicated to Roz and David that such an arrangement should not be a problem upon request, as the freight elevator was routinely used by tenants for moving items. Id.

After moving into the Simon Levi, David and Roz made a formal request to management for permission to use the freight elevator to transport David to and from their 3rd floor residence. Id. at ¶5. David must leave Simon Levi multiple times per week for dialysis and medical appointments, and the passenger elevator at Simon Levi is simply too small to

accommodate him. Id. Despite the fact that the freight elevator is operational, Defendants refused the accommodation, forcing David to use the much smaller passenger elevator. Id. at ¶6.

David and Roz continued to ask Defendants for permission to use the freight elevator as an accommodation for David's disability throughout their tenancy and leading up to the filing of their Complaint. Id. at ¶7. Their last request preceding the filing of the Complaint was dated February 2, 2015. Id. Defendants have steadfastly refused the requested accommodation, and furthermore, have failed to engage in any interactive process with Roz and David to determine how David's needs might otherwise be met. Id.

David and Roz have explained to Defendants that David is unable to use the passenger elevator at the Simon Levi without considerable discomfort and pain. Id. at ¶8. Among other things, Roz and David have explained to Defendants that: (1) David's legs need to be extended and elevated at all times, due to radically reduced blood flow; (2) in order to fit David in the passenger elevator, Roz must adjust David's wheelchair and fold his legs up, positioning that is both painful and dangerous; and (3) they have been warned by David's doctors that if David's foot is not constantly elevated and all pressure removed from it, complications due to vascular steal syndrome will result, requiring amputation. Id. Despite having this information, Defendants have continuously denied David's accommodation request. Id.

As noted above, David has medically necessary dialysis appointments three times a week. He travels to those appointments by gurney/medical transport. Id. at ¶9. On these days, Roz is forced to use the passenger elevator to bring David down in his wheelchair to meet medical transport personnel. Id. David is subjected to unnecessary and avoidable pain on each

of these trips, as Roz must fold his legs up to fit him in the passenger elevator. Id.

When David returns home from dialysis, non-emergency EMTs must lift the head of his gurney up to a 90 degree angle to fit him in the passenger elevator and transport him back to his unit. Id. at ¶10. This positioning causes David's head to pitch forward, affecting his ability to breathe and eliciting painful, secretions coughs. Id. Also, due to the lack of sufficient space, David's feet are always pressed painfully against the passenger elevator wall. Id.

On those occasions that the EMTs bring a larger than standard gurney to transport David back up to his unit after dialysis, he simply does not fit in the passenger elevator at Simon Levi at all. Id. at ¶11. In those instances, David and Roz must call the building super to insist that he open the freight elevator. Id. At times, it has taken hours to reach the super and get the freight elevator turned on, so that David can be transported back to his unit. Id.

On one occasion during their tenancy, David and Roz had to summon emergency medical personnel to assist David and transport him for medical treatment. Id. at ¶12. Because Defendants have refused to allow David to use the freight elevator, the emergency personnel were forced to carry David down three flights of stairs on a gurney. Id. As there is a spiral section to the stairwell, David had to be born dangerously aloft and positioned with the head of the gurney completely upright at 90 degrees—a position which caused David's head to pitch forward and the tightened straps of the gurney to press painfully on his ostomy stoma. Id.

David and Roz have shared all of the above information with Defendants, but they still will not provide David the requested accommodation. Id. at ¶13.

Although Defendants will not allow David to use the freight elevator as an accommodation for his disability, they do allow other tenants in the building to use the freight elevator when moving items. Id. at ¶14.  Notably, when Roz has asked Defendants to open the freight elevator so that she can move items, they have refused her request, because they believed she was really just going to move David. Id. Consequently, David and Roz have not even been afforded the same access to the freight elevator enjoyed by other tenants. Id.

Defendants also open the freight elevator for passenger access and use – including David's use - when the regular passenger elevator breaks down. Id. at ¶15.

Over the last two weeks, the passenger elevator has been making noises and jerking and lurching between floors. Id. at ¶16.  The jerking and lurching exacerbates the pain and discomfort David already experiences using the passenger elevator. Id. Roz is extremely frightened that the elevator will simply stop and trap David and her within it, which could have serious consequences for David's health. Id.

David and Roz would like to continue to reside at the Simon Levi, as their unit is perfect for their needs and they enjoy the building's location. Id. at ¶17. However, David and Roz require the ability to utilize the freight elevator for David's transport in order to continue residing at Simon Levi safely and free from discrimination and injury. Id.

## II.   ARGUMENT

The function of a preliminary injunction is to preserve the status quo and prevent irreparable loss of rights before judgment.[1] A court may issue a preliminary injunction if a plaintiff demonstrates that: (1) he is likely to

---

[1] Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).

succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) the injunction is in the public interest.[2] In the Ninth Circuit, courts analyze these factors along a "sliding scale" such that "a stronger showing of one element may offset a weaker showing of another."[3] As described herein, Plaintiff meets the standard for preliminary injunction.

### A. Plaintiff is Likely to Succeed on the Merits of his Claims

#### 1. Fair Housing Amendments Act (FHAA)

The Fair Housing Amendments Act of 1988 makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection with such dwelling, because of a handicap of that person."[4] Among the discriminatory practices prohibited by the FHAA is "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling."[5]

To succeed on his claim of discrimination based on failure to reasonably accommodate, Plaintiff must demonstrate that: (1) he suffers from a disability as defined by the FHAA; (2) Defendants knew or reasonably should have known of his disability; and (3) accommodation of his disability "may be necessary" to afford him equal opportunity to use and

---

[2] Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)).
[3] Id.
[4] 42 U.S.C. § 3604(f)(2)(A).
[5] 42 U.S.C. § 3604(f)(3)(B); City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).

enjoy his dwelling; and (4) Defendant refused to make such accommodation.[6] Plaintiff meets this standard.

### a) *Plaintiff is a qualified individual with a disability.*

The first element Plaintiff must establish is that he is an individual with a disability, as that term is defined in the FHAA.[7] Under the FHAA, a disability is a physical or mental impairment which substantially limits an individual's major life activities.[8] Plaintiff meets this definition. Plaintiff is an individual with multiple disabilities including quadriplegia, aphasia, apraxia and vascular steal syndrome. He is significantly impaired with regard to mobility, and requires use of a wheelchair.

### b) *Defendant knew or should have known of Plaintiff's disability.*

At all times relevant to this matter, Defendant was aware of Plaintiff's disabilities. Plaintiff's disabilities are obvious. Moreover, Defendants were repeatedly advised of Plaintiff's disabilities through his numerous accommodation requests, including, but not limited to, the February 2, 2015 request that preceded the filing of Plaintiff's Complaint.

---

[6] United States v. California Mobile Home Park Mgmt. Co., 107 F 3d 1374, 1380 (9th Cir. 1997).

[7] Giebeler v. M&B Associates ("Giebeler"), 343 F.3d 1143, 1147 (9th Cir. 2003); 42 U.S.C. §3602(h).

[8] Id. Notably, the FEHA defines disability even more broadly than the FHAA. Under the FEHA, a plaintiff seeking to prove she is disabled need show only that the physical or mental condition results in a "limitation" of a major life activity, not a "substantial limitation." The distinction is meant to result in broader coverage for plaintiffs seeking redress than under the FHAA.

### c) *Plaintiff's accommodation request is necessary and reasonable.*

"To prove an accommodation is necessary, [plaintiff] must show that, but for the accommodation, [he] likely will be denied an equal opportunity to enjoy the housing of [his] choice."[9] Put differently, "[w]ithout a causal link between defendant['s] policy and plaintiff's injury, there can be no obligation on the part of defendant [ ] to make a reasonable accommodation."[10]

In the instant case, Plaintiff's requested accommodation is clearly necessary. Without the ability to use the freight elevator at Simon Levi, Plaintiff has been, and will continue to be subjected to unnecessary medical risks and forced to endure pain, discomfort and injury getting to and from his unit.

Plaintiff's request is also reasonable. Ordinarily, an accommodation is reasonable under the FHAA "when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens."[11] Plaintiff "need only show that an accommodation 'seems reasonable on its face, i.e., ordinarily or in the run of cases."[12] "Once the plaintiff has made this showing, the defendant [ ] then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."[13] Allowing Plaintiff to use the freight elevator will impose no fundamental alteration in the nature of the Defendants' housing program, nor will it create any undue financial or administrative burdens. This is

---

[9] Giebeler, 343 F.3d at 1155.
[10] United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d at 1381.
[11] Giebeler, 343 F.3d at 1157 (citations and internal quotation marks omitted).
[12] Id. at 1156 (quoting U.S. Airways, Inc. v. Barnett ("Barnett"), 535 U.S. 391, 401, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002)).
[13] Barnett, 535 U.S. at 402.

illustrated by the fact that the freight elevator is used on a regular basis by tenants of Simon Levi. Defendants' claim that they are precluded from granting Plaintiff's accommodation request while they continue to allow other tenants passenger use of the freight elevator is therefore disingenuous at best.

It is anticipated that Defendants will argue that they are justified in their denial of Plaintiff's accommodation request because state regulations do not allow the use of freight elevators for passenger service. This argument fails. In addition to the fact that Defendants already utilize the freight elevator for passenger service, the language of the FHAA manifests a clear congressional intent to vitiate the application of any state law – including the state regulation Defendants purport to rely on - that would permit discrimination based on physical handicap.[14] Because the FHAA contains "an express provision for preemption," there can be no doubt that Congress intended to preempt any state or local law "that purports to require or permit any action that would be a discriminatory housing practice...."[15] Even absent this express preemption provision, the state regulation at issue in the instant case would be naturally preempted to the extent it conflicts with the FHAA. Such conflicts exist not only where "it is impossible * * * to comply with both state and federal law," but also "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[16]

---

[14] See 42 U.S.C. § 3615 (expressly commanding that "any law of a State ... that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid").

[15] See Crosby v. National Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); 42 U.S.C. § 3615.

[16] Id. at 372-373 (internal citation, brackets, and quotation marks omitted).

### 2. *State Law*[17]

The California Fair Employment and Housing Act (FEHA) prohibits "a refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."[18] The FEHA was written to "to conform California law on the subject of fair housing to the Federal Fair Housing Act."[19] Accordingly, an analysis under the FEHA mirrors an analysis under the FHAA.[20] The elements to prove Plaintiff's claims under the FEHA in this matter are the same as those under the FHAA, as discussed above. Because Plaintiff has established he is likely to prevail on his FHAA claim, he is also likely to prevail on his FEHA claim.

### B. **Plaintiff is Likely to Suffer Irreparable Harm Absent Preliminary Relief**

A showing of a substantial likelihood that a defendant has violated the federal Fair Housing Act is sufficient, by itself, to create a presumption of irreparable harm.[21] Even if it was not presumed, Plaintiff can meet his burden of demonstrating irreparable harm. "Irreparable injury is that which is substantial and not compensable by monetary damages or other legal

---

[17] Although Plaintiff is confident he will also prevail on his Disabled Persons Act claim, for the sake of brevity and because he is clearly entitled to the injunctive relief he now seeks under FHAA and FEHA, that claim is not discussed separately herein.
[18] Cal. Gov't Code § 12927(c)(1).
[19] Broodmore San Clemente Homeowners' Assn. v. Nelson, 25 Cal.App.4th 1, 5–7, 30 Cal.Rptr.2d 316 (1994).
[20] Walker v. City of Lakewood, 272 F.3d 1114, 1131 n. 8 (9th Cir.2001); see also S. California Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n, 426 F.Supp.2d 1061, 1068 (C.D.Cal.2005) (same).
[21] Silver Sage Partners v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir.2001) ("irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes").

remedies."[22] Additionally, "injuries to individual dignity and deprivations of civil rights constitute irreparable injury."[23] In the instant case, the pain, discomfort and medical complications caused Plaintiff as the direct and proximate result of Defendants' failure and refusal to grant his accommodation request constitute irreparable injury.

### C. The Balance of Hardships Heavily Favor Plaintiff

The balance of hardship weighs strongly in Plaintiff's favor. The physical harm Plaintiff faces as the result of Defendants' ongoing refusal to allow him to use the freight elevator at Simon Levi far outweighs any potential detriment Defendants may endure by allowing Plaintiff to use the freight elevator. In allowing Plaintiff to use the freight elevator, Defendants will be in the same position they would be if the passenger elevator was broken down, or tenants were moving in or out of the building.

### D. The Public Interest is Best Served Through Issuance of an Injunction

"The public interest has been authoritatively declared by Congress in its enactment of the FHA[A]."[24] Indeed, the Fair Housing Act permits the Attorney General to "vindicate the public interest" while simultaneously allowing private persons to enforce the Fair Housing Act.[25] California law

---

[22] Gonzalez v. Recht Family P'ship, No. 14CV2940-WQH-DHB, 2014 WL 7564713, at *3 (S.D. Cal. Dec. 30, 2014)(internal citation omitted).
[23] Cupolo v. Bay Area Rapid Transit, 5 F.Supp.2d 1078, 1084 (N.D. Cal., 1997) (citing Chalk v. United States Dist. Court, 840 F.2d 701, 710 (9th Cir. 1988).
[24] 42 U.S.C. § 3601 ("It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.")
[25] 42 U.S.C. §§ 3613 and 3614(d)(1)(c).

contains a similar declaration.[26] As the public interest in protecting individuals with disabilities against unlawful housing discrimination weighs heavily in Plaintiff's favor, Plaintiff asks this Court to find that the issuance of a preliminary injunction in the instant matter would serve the public's interest in preventing the injustice of housing discrimination based on disability.

### III. PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND

Plaintiff requests that he not be required to post an injunction bond if his Application is granted. Federal Rule of Civil Procedure 65(c) "invests the district court 'with discretion as to the amount of security required, if any.'"[27] A district court has the discretion to disperse with the security requirement where giving security would effectively deny access to judicial review[28]; where the plaintiffs are indigent[29]; when it concludes there is "no realistic likelihood of harm to the defendant from enjoining his or her conduct"[30]; and/or "where the movant has demonstrated a likelihood of success"[31].

Here, an injunction bond is not necessary. Plaintiff has demonstrated a likelihood of success on his claims. Additionally, there is no harm to Defendants in allowing Plaintiff to use the freight elevator pending the

---

[26] See Cal. Gov. Code § 12921 ("The opportunity to seek, obtain, and hold housing without discrimination because of ... disability ... is hereby recognized as and declared to be a civil right.").
[27] Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)(emphasis in original; quoting Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999).
[28] Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2004)(citation omitted).
[29] Walter v. Pierce, 665 F. Supp. 831, 844 (N.D. Cal. 1987)
[30] Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir.2009) (quoting Jorgensen, 320 F.3d at 919)
[31] Ticketmaster L.L.C. v. RMG Techs., Inc., 507 F.Supp.2d 1096 (C.D.Cal.2007)

outcome of his Complaint. Finally, requiring a bond would effectively deny Plaintiff, an individual with disabilities with limited income, access to judicial review by this Court. Plaintiff therefore asks that the Court utilize its discretion to dispense with the security requirement.

## IV.   CONCLUSION

For the foregoing reasons, the Court should issue a mandatory preliminary injunction enjoining Defendants Trilogy Real Estate Management and Simon Levi LLC, to grant Plaintiff, his caregivers and medical personnel use of the freight elevator at Simon Levi to transport Plaintiff to and from his unit, pending the outcome of the instant litigation.

Dated: March 9, 2015            CENTER FOR DISABILITY ACCESS

                               By:   /s/ Michelle Uzeta
                                     Michelle Uzeta